Argued February 13; affirmed March 20; rehearing denied
April 17, 1945

# WEHOFFER *v.* WEHOFFER

(156 P. (2d) 830)

Before BELT, Chief Justice, and ROSSMAN, KELLY,
BAILEY, LUSK, BRAND and HAY, Associate Justices.

*Harry G. Hoy,* of Portland (Hoy & Prag, of Portland, on the brief), for appellant.

*Albert A. Absher* and *Paul R. Harris,* both of Portland, for respondent.

HAY, J.

In this action, the plaintiff, Augusta V. Wehoffer, sought to recover of defendant, John Wehoffer, her former husband, the sum of $4,950, as reasonable value of the use and occupation of certain real property for the period from May 1, 1933, to and including February 22, 1944. The defendant admitted having used and occupied the premises, but denied liability for rent. He pleaded two counterclaims. The first was for money loaned plaintiff between November 16, 1932, and December 18, 1933, aggregating $1,898.97. The second was for money loaned plaintiff between February 20, 1937, and May 16, 1940, aggregating $580.50. These loans, he alleged, plaintiff promised to repay. Trial by jury resulted in a verdict for defendant in the sum of $1,387.72. He had judgment in due course, and plaintiff has appealed therefrom.

During the period covered by the above transactions, and for many years prior thereto, the parties

were husband and wife. Plaintiff was a practising chiropractic physician, and defendant, a cigar manufacturer. In 1933, Mrs. Wehoffer erected a dwelling-house upon a city lot in Portland which she owned. Thereafter, until dissolution of the marriage, a period of about ten years, the parties occupied this dwelling-house as their family residence. Defendant used the garage on the premises as his "factory" (it must have been a one-man affair), and a portion of the basement of the dwelling-house for storage purposes.

Plaintiff, by demurrer, pleaded the bar of the six-year statute of limitations (section 1-204, O. C. L. A.) against the counterclaim contained in defendant's first affirmative answer, and assigns error upon the overruling of such demurrer. She contends that the statute of limitations is applicable to actions between husband and wife, there being no express exception thereto in respect of such actions. The only authority cited in support of this proposition is *In re Estate of Samuel Deaner,* 126 Iowa 701, 102 N. W. 825, 106 Am. St. Rep. 374. In that case, the wife had loaned money to her husband and had taken his promissory notes therefor. The court held that, under the law of Iowa, she had a right to contract with her husband in respect of her separate estate and to maintain an action therefor, as if she were unmarried. It held further, however, that the action was barred by the statute of limitations, "even though we might think that, owing to the relation of the husband and wife, she should be relieved from the necessity of pressing her claims against her husband in order to keep them alive."

■ Concerning the applicability of the statute of limitations in such cases, a contrary doctrine has been firmly established in this case. The point was first con-

sidered in the case of *Banfield v. Schulderman,* 137 Or. 256, 299 P. 323, 3 P. (2d) 116, wherein this court held that such statute had no application to transactions between husband and wife. The rule thus laid down was restated more elaborately in *Cary v. Cary,* 159 Or. 578, 80 P. (2d) 886, 121 A. L. R. 1371, wherein we said:

"It is evident that whether the doctrine of Banfield v. Schulderman, supra, be sound or not, it takes its root in considerations of public policy and is quite independent of statutory provisions with regard to the disabilities of coverture. It is also evident that the court in that case announced its conclusion after deliberate consideration of the course of legislation in this state on the subject, of the authorities, and of the reason of the rule. As in Wisconsin, the decision has become a rule of property that we think should not be disturbed."

We hold, therefore, that the court committed no error in overruling the plea of the statute of limitations in this case.

Appellant contends that the court erred in refusing to instruct the jury, as requested by her, as follows:

"In the State of Oregon where the husband or wife obtains possession or control of the property belonging to the other, either before or after marriage, the owner of the property may maintain an action therefor and may maintain an action for the reasonable value of the use of the property while it was retained and used by the other."

"It appearing from the undisputed evidence in this case that the property occupied and used by the defendant as a cigar factory, and for storage of leaf tobacco, was, during all of the time so occupied, the property of the plaintiff, the plaintiff would be entitled to compensation from defendant for the reasonable value of the use thereof during

all of the time the same was so occupied and used by him."

In this connection, appellant relies upon section 63-209, O. C. L. A., which provides:

"Should either the husband or wife obtain possession or control of property belonging to the other either before or after marriage, the owner of the property may maintain an action therefor, or for any right growing out of the same, in the same manner and extent as if they were unmarried."

■ The language of the foregoing section being plain and unambiguous, appellant asserts that it needs no interpretation. This is without doubt the general rule of statutory construction. 50 Am. Jur., Statutes, section 225; *State v. Newman*, 109 Or. 61, 65, 218 P. 936.

■ Respondent, on the other hand, argues that a wife has no right to maintain an action for the reasonable value of the use of her property by her husband. The premises occupied by respondent were, as has been stated, a portion of the family dwelling-house. The action was upon quantum meruit, and it was not pretended that there was any promise upon the part of respondent to pay rent. While, without doubt, the provisions of section 63-209, O. C. L. A., should be given full effect in a proper case, nevertheless the authorities hold that, where husband and wife are living together, the wife, although she owns the premises, is not entitled to exact rent from her husband for the use thereof, unless he has agreed to compensate her therefor. *Trefethen v. Lynam*, 90 Me. 376, 38 A. 335, 38 L. R. A. 190, 60 Am. St. Rep. 271; *Donovan v. Griffith*, 215 Mo. 149, 114 S. W. 621, 20 L. R. A. (N. S.) 825, 128 Am. St. Rep. 458, 15 Ann. Cas. 724; *Davis v. Watts, Administrator*, 90 Ind. 372, 373; 41 C. J. S., Husband

and Wife, section 280. *In Manufacturers Trust Co. v. Gray,* 278 N. Y. 380, 16 N. E. (2d) 373, 117 A. L. R. 1176, it was held that, where a wife uses her own money to pay household expenses, she may seek reimbursement from her husband only where he has promised such reimbursement, either expressly or by implication of fact or of law. In *Williams v. Williams,* 146 Tenn. 1, 236 S. W. 926, 930, it is stated:

> "There can be no doubt we think of the soundness of the general principle as stated by counsel for the defense, in substance to the effect that, where husband and wife are living together and the income of the wife's separate estate is used by the husband without objection on the part of the wife, there being no undue influence exercised, either for their joint purposes, living expenses, or for the husband's own purposes, through a long series of years, the consent of the wife is presumed from her acquiescence, and she cannot subsequently recall such consent and have an accounting with her husband."

See generally 26 Am. Jur., Husband and Wife, sections 342, 344; Annotation, 101 A. L. R., pp. 442, 443.

The parties lived together as husband and wife for some forty years. For about thirty of those years, prior to their removal into plaintiff's premises in 1933, they lived in a dwelling owned by defendant. It is worthy of note, as indicative of their erstwhile mutually accommodative spirit toward the furtherance of each other's business, that, throughout that period of thirty years, the defendant used the basement of his house as his cigar factory and the plaintiff used the upper part of the house as her professional offices. The garage, which is a part of the subject in suit, was an appendage of defendant's former dwelling, was removed by him to plaintiff's property when the parties

took up their residence thereon, and was then enlarged by him and adapted to his business of cigar-making.

Respondent argues that the provisions of section 63-209, O. C. L. A., are applicable only to a case where the control or possession of the wife's property is exclusively in the husband, and is wrongful, or adverse to the wife. This contention has the support of reason and authority.

"* * * Until some reason exists for the assertion of a title by the husband or wife, one against the other, the presumption will conclusively obtain that the possession of each is through, and on account of, the family relation, and not under a claim of ownership adverse to the title under which possession was taken, in whichever of the parties that title may be." 41 C. J. S., Husband and Wife, section 42a.

In *Schleicher v. Schleicher*, 120 Conn. 528, 182 A. 162, 104 A. L. R. 572, it was held that, where a husband has been in occupation of real property, with the consent of his wife, the owner, without any intent on the part of either that rent should be paid, then rental value is recoverable only from a time when the occupation became adverse to the wife's ownership.

■ Section 63-209, O. C. L. A., was section 3 of "An Act defining the Rights and fixing the Liabilities of Married Women, and the relation between Husband and Wife", adopted by the Oregon legislature in the year 1878 (General Laws 1878, p. 92). The act appears to have been based upon a statute of the State of Iowa (chapter 2, Title XV, Iowa Code 1873). Section 3 is taken verbatim from the Iowa act. Respondent suggests that, in adopting the Iowa statute, the Oregon legislature must be presumed to have intended to adopt the prior construction of the statute made by

the Iowa courts. It is true that such prior construction is entitled to great weight. *State ex rel. Johnson v. Circuit Court,* 114 Or. 6, 233 P. 563, 234 P. 262; *Getchell v. Walker,* 129 Or. 602, 278 P. 93. Counsel for respondent, however, have not cited to us any decisions by the Iowa court construing the statute, prior in time to the date of its adoption by Oregon, and our own research has failed to discover any. Subsequent Iowa decisions, however, are cited, although, of course, these are less persuasive. Thus, in *Porter v. Goble & Co.,* 88 Iowa 565, 55 N. W. 530, the court construed the object of the Iowa statute as being "to afford husband and wife a remedy for the recovery of property wrongfully or improperly withheld by the one from the other". In *Hanson & Myer v. Manley,* 72 Iowa 48, 33 N. W. 357, a suit in the nature of a creditors' bill to set aside a conveyance of real property by a judgment debtor to his wife, made after the judgment debts had been contracted, the wife defended on the ground that she had advanced money to her husband, some of which he had expended for improvements upon the real property in question. The court said, in part:

> "The statutes of this state governing the property rights of the husband and wife, as between themselves, are exceedingly liberal. Many of the common law disabilities of married women have been abrogated. Under these statutes they can hold and manage and control personal property to the same extent as though single. They can contract with reference to it, even with their husbands, and maintain actions in their own names for the enforcement of their contracts with reference thereto. And, when their property comes into the possession of their husbands, they are not divested of their right thereto, but may sue for its recovery. (Code, chapter 2, title 15.)

" * * * The object of the legislature was to abrogate the disabilities imposed upon them by the common law. The mutuality of interest between the husband and wife which arises out of their relation is in no manner affected by the statute. The wife is benefited, as she always was, by the success of the husband in the business in which he engages. If she advances money or property to him to be employed in that business, they may contract for compensation therefor, and such contract will be valid and enforceable. But if she makes such advancement voluntarily, and without such contract, the reasonable presumption is that the advancement is made in view of the mutual benefits which are likely to accrue from the use of the advancement. Under such circumstances, the law will not create the relation of debtor and creditor between the parties. It will enforce the contracts of the parties, but it will not imply an agreement when the parties have not entered into one. The husband in this case, then, was under no legal obligation to repay the wife the money she had advanced to him. He was in no legal sense her debtor for the amount. * * *"

■ We are of the opinion that section 63-209, O. C. L. A., is not applicable to a situation in which a portion of the family residence is occupied by the husband, with the consent of the wife, for purposes of his business, where there has been no agreement that he should pay rent therefor, and where his occupation is not adverse to the wife's title. This is particularly true where, as here, the earnings of the husband derived from the business which he carried on upon his wife's premises were, at least in part, devoted to the support of the family.

■■ The appellant requested the court to instruct the jury as follows:

"The plaintiff has alleged in her reply and testified at the trial that on the 9th day of March,

1937, at defendant's special instance and request, plaintiff loaned to the defendant the sum of $400.00 which he agreed to repay in monthly instalments. If you believe from the evidence that such a transaction took place the existence of such a transaction between plaintiff and defendant would create a strong presumption to the effect that prior to the time said loan was made, any indebtedness previously owing by the plaintiff to the defendant had been paid by her and that no indebtedness from the plaintiff to defendant existed at the time of the making of said loan.''

Appellant contends that she was entitled to the foregoing requested instruction (which was refused), by virtue of the statutory disputable presumptions that private transactions have been fair and regular, and that the ordinary course of business has been followed. Section 2-407, O. C. L. A., subd. 19, 20.

Assuming, without deciding, that, from the facts stated in the requested instruction, the jury might have made the inference suggested, nevertheless it would, in our opinion, have been improper for the court to have given it.

''The court must not state as a presumption of law that which is a matter for the jury's determination, and a requested instruction of that nature is properly refused; and so it must not state the strength of a presumption of fact and the amount of proof necessary to overcome it.   *  *  *   Stating as a presumption that which is merely a matter of inference is error.''

64 C. J., Trial, section 508.

See also ibid., section 479; Branson, Instructions to Juries, 3 ed., section 20.   Cf. *De War v. First Nat. Bank of Roseburg,* 88 Or. 541, 171 P. 1106; *Saratoga Inv. Co. v. Kern,* 76 Or. 243, 148 P. 1125.   In *Patterson v. Hay-*

*den,* 17 Or. 238, 21 P. 129, 11 Am. St. Rep. 822, 3 L. R. A. 529, which was an action for damages for seduction of plaintiff's daughter, the defendant asked the court to instruct the jury that the fact that the young woman was, at the time of her alleged seduction, afflicted with a venereal disease would, if not explained, in itself be sufficient evidence of unchastity to prevent a recovery in the action. The court approved the refusal of the trial court to give such instruction, holding that it is the province of the jury, and not that of the court, to determine the effect of evidence, except where its effect is declared by the code.

The requested instruction under consideration here was objectionable, as invading the province of the jury. Moreover, to have instructed that a "strong presumption" had been created by certain facts would have been improper. Even where a presumption of fact, or inference, exists, its strength or weakness is to be determined by the jury. *Leiserowitz v. Fogarty,* 135 Ill. App. 609; *McBride v. Sullivan,* 155 Ala. 166, 45 So. 902.

We find no error, and the judgment is, therefore, affirmed.